UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACEY LORUSSO,                      :
                                     :CIVIL ACTION NO. 3:12-CV-1275
        Plaintiff,                   :
                                     :(JUDGE CONABOY)
        v.                           :
                                     :
CAROLYN W. COLVIN,[1]                :
Acting Commissioner of               :
Social Security,                     :
                                     :
        Defendant.                   :
                                     :

## **MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) The Administrative Law Judge ("ALJ") who originally evaluated the claim found that Plaintiff had the residual functional capacity to perform less than a full range of sedentary work, that jobs existed which she could perform, and, therefore, Plaintiff was not under a disability as defined in the Social Security Act. (R. 16, 21-22.) With this action, Plaintiff argues that the determination of the Social Security Administration is error for three reasons: 1) the ALJ did not consider that Plaintiff was entitled to benefits during her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

"re-entitlement period"; 2) the ALJ concluded Plaintiff's impairments did not meet or equal a listed impairment; and 3) the ALJ did not properly consider and discuss Plaintiff's impairments in combination and the impact on her ability to work. (Doc. 7 at 4.)

For the reasons discussed below, we conclude remand to the Acting Commissioner is required.

### I. Background

On February 18, 2009, Plaintiff protectively filed an application for Title II Disability Insurance benefits. (R. 87-93.) Plaintiff, whose date of birth is October 17, 1975, claimed disability beginning on November 4, 2008. (R. 87.) Plaintiff listed the illnesses, injuries, or conditions that limited her ability to work as "herniated disc in back, learning disability, depression." (R. 131.) She added that she cannot bend over without pain and could not sit or stand for long periods. (*Id.*) Plaintiff is married and does not have children. (R. 87-88.) Plaintiff had past work as a nurse's aid. (R. 21)

The Social Security Administration denied Plaintiff's application by decision issued on June 19, 2009. (R. 59-70.) On July 16, 2009, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge. (R. 93.) On September 8, 2010, ALJ Ronald Sweeda held a hearing at which Plaintiff and a vocational expert ("VE") testified. (R. 28-56.)

2

In response to the question of why she was unable to work, Plaintiff testified "I've had three back surgeries in '09. I have rods in my back. I've had bone taken out of both my hips. I suffer from terrible anxiety, depression, obsessive compulsive disorder, bipolar. The medicines I take make me extremely tired. I have to lay down throughout the day." (R. 35.) At the time of the hearing, Plaintiff was taking Baclofen, Celebrex and Neurontin for pain. (R. 35.) She was also taking Lithium, Vistaril and Lexapro prescribed by her psychiatrist, Ashokkumar Patel, M.D. (R. 37.) Plaintiff testified that she had problems with her memory, she's very shy and people make her extremely nervous, she does not have friends, and she has no hobbies. (R. 38-39.) In response to the ALJ's question of how she spends her days, Plaintiff stated that she visited with her sister-in-law who lives next door, her mother comes down and takes her out for a bit, and she reads. (R. 39.)

Following Plaintiff's testimony, the ALJ asked the VE whether there were jobs for a hypothetical claimant with the same age, education and work experience as Plaintiff with the residual functional capacity to perform light work, but which would allow a change of position from sitting to standing at least every thirty (30) minutes plus other limitations. (R. 54.) The VE identified several positions. (R. 54.) The ALJ then asked a similar hypothetical but limited Plaintiff to sedentary work with the same limitations. (R. 54.) Again, the VE identified several positions.

(R. 55.)  When the ALJ added the restriction that the hypothetical claimant would be off task up to twenty percent of the work day, the VE responded there would be no jobs for such a person.  (R. 55.)

By decision of October 8, 2010, ALJ Sweeda found that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 22.)  The following findings of fact and conclusions of law from the ALJ's decision are relevant to Plantiff's claimed errors: 1) Plaintiff has severe impairments of a "history of thoracic fusion, opiate dependence, mood disorder, and anxiety related disorder" (R. 14); 2) Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments (R. 15); and 3) Plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Plaintiff is capable of lifting and carrying up to ten pounds occasionally and two to three pounds frequently, she is limited to occupations that permit her to change from sitting to standing at least every thirty minutes, occupations that do not require crawling, kneeling or climbing and no more than occasional stooping or bending, occupations that require no exposure to temperature or humidity extremes, vibrations, unprotected heights or dangerous machinery, and she is limited to performing simple, repetitive tasks in a low stress environment defined as not involving production rate quotas)(R. 16).

4

As noted above, the ALJ ultimately decided that jobs exist in the national economy that Plaintiff can perform. (R. 22.) Thus, he determined that Plaintiff had not been under a disability as defined in the Social Security Act from November 4, 2008, through the date of his decision, October 8, 2010.[2] (R. 22.)

On or about December 11, 2010, Plaintiff filed a timely request with the Social Security Administration Appeals Council for review. (R. 7-8.) In an Order dated May 11, 2012, the Appeals Council denied Plaintiff's Request for Review (R. 1-6), making the ALJ's decision the decision of the Commissioner.

Plaintiff filed this action on July 3, 2012. (Doc. 1.) She filed her brief in support of the appeal on December 6, 2012. (Doc. 7.) Commissioner Astrue filed his opposition brief on September 5, 2012. (Doc. 10.) Plaintiff did not file a reply brief and the time for doing so has passed. Therefore, this matter is ripe for disposition.

## II. Discussion

### A. *Relevant Authority*

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3] It is necessary for the

---

[2] The ALJ noted that Plaintiff remains insured through December 31, 2013, and she must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (R. 12.)

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically

5

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner

---

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

7

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). These proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's

8

responsibility to rebut it be strictly construed." *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Only where the ALJ rejects conflicting probative evidence must he fully explain his reasons for doing so. *See*, *e.g.*, *Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (citing *Kent v. Schweiker*, 710

9

F.2d 110, 114 (3d Cir. 1983)).  Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

## B. *Plaintiff's Alleged Errors*

As set out above, Plaintiff asserts the ALJ erred on three bases: 1) the ALJ did not consider that Plaintiff was entitled to benefits because she became disabled during her extended period of eligibility, also known as the "re-entitlement period"; 2) the ALJ concluded Plaintiff's impairments did not meet or equal a listed impairment; and 3) the ALJ did not properly consider and discuss Plaintiff's impairments in combination and the impact on her ability to work.  (Doc. 7 at 4.)  We will address each in turn.

## 1. *Extended Period of Eligibility*

Plaintiff first argues that the ALJ should have considered whether she was entitled to benefits because she became disabled during her extended period of eligibility as set out in 20 C.F.R. § 404.1592(a).  (Doc. 7 at 5.)  We conclude the ALJ did not err on this basis.

This asserted basis for relief relates to Plaintiff's receipt

10

of social security disability benefits as a result of injuries she sustained in an automobile accident which occurred in 1999. (Doc. 7 at 3.) Plaintiff experienced a thoracic spine injury for which she underwent surgery--a T5-6 thoracotomy and discectomy. (*Id.*) Plaintiff's claim for DIB was approved in 2001 with an onset date of September 16, 1999, on the basis of meeting a listed impairment. (*Id.*)

This issue does not warrant further discussion in that this matter relates to Plaintiff's prior claim. Plaintiff acknowledges that her benefits were terminated "in or about March/April of 2007" for failure to attend a consultative examination ("CE"). (Doc. 7 at 6.) Though Plaintiff presents a statutory/regulatory framework addressing a claimant who engages in a trial work period, she presents no authority to support the proposition that these provisions apply to a claimant whose benefits were terminated on an unrelated basis. (Doc. 7 at 5-7.) Nor does Plaintiff present any authority that the provisions apply to a new claim for benefits filed over eighteen (18) months after previously awarded benefits were terminated. (*See id.*) Absent such support, we conclude any assertion that benefits were improperly terminated should have been raised in a timely appeal of the 2007 termination decision.

## *2.  Listed Impairment*

Plaintiff asserts the ALJ erred at step three of the evaluation process by concluding that Plaintiff's impairments do

11

not meet or equal a listed impairment. (Doc. 7 at 8.) Defendant responds that Plaintiff did not meet her burden of showing that she had an impairment of listing-level severity. (Doc. 10 at 14 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).) Defendant adds that Plaintiff has not identified the listed impairments and the medical basis for her assertion that she meets or equals a listing, but rather generally alleges that her impairments satisfy Sections 1.04, 12.04 and 12.06. (Doc. 10 at 14.) We conclude remand is required for a proper analysis of whether Plaintiff' impairments meet or equal a listed impairment.

    The ALJ did not provide any analysis for his determination that Plaintiff's physical impairments do not meet or equal a listed impairment. (*See* R. 15-16.) Plaintiff asserts his conclusion was error, noting first that she was previously granted benefits for her thoracic spine injury as it was deemed severe enough to meet a listing, presumably listing 1.04 entitled "Disorders of the Spine." (Doc. 7 at 9.) Plaintiff adds that her condition worsened and she required multiple in-patient hospitalizations and three additional surgeries. (Doc. 7 at 10.) We conclude that, although Plaintiff presents this issue in general terms rather than specifically relating record citations to listing requirements, she is accurate that the ALJ did not provide any analysis for his section 1.04 determination. (Doc. 7 at 10.)

    Plaintiff is also accurate that the ALJ's analysis of her

12

mental impairments did not take into account probative evidence supporting these impairments. (R. 12-13.) We find of particular significance the ALJ's failure to acknowledge that consulting examiner Elizabeth Ciaravino, Ph. D. noted marked limitations in several categories (R. 301) and that Plaintiff had three in-patient hospitalizations for psychiatric and drug dependence issues. (*See* R. 401-497.) Failure to discuss this type of probative evidence is cause for remand. *Dobrowolsky*, 606 F.2d at 407; *Cotter*, 642 F.2d at 705; *Walker*, 61 F. App'x at 788-89.

### *3. Combination of Impairments*

With her final basis for appeal, Plaintiff asserts the ALJ erred by failing to properly consider her impairments in combination pursuant to 20 C.F.R. §§ 404.1545 and 416.945, and it is clear from the record that the cumulative effect of her impairments results in her inability to perform even less than a full range of sedentary work. (Doc. 7 at 14-15.) Defendant maintains that the ALJ properly considered Plaintiff's combination of impairments and her medication history. (Doc. 10 at 20.) Defendant asserts the key question is whether the ALJ incorporated all of Plaintiff's credibly established limitations in the residual functional capacity and Plaintiff has offered no evidence that the ALJ's functional capacity assessment is incorrect. (*Id.*) We agree that the ALJ did not adequately discuss Plaintiff's impairments in combination and their effect on Plaintiff's ability to work.

13

Again we find that Plaintiff for the most part argues this issue in generalities rather than with specific citations to evidence of record. (Doc. 7 at 14-15.) However, given the remedial nature of the Social Security Act, that the agency must take extra care in developing an administrative record and in explicitly weighing all evidence, and that "courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed," *Dobrowolsky*, 606 F.2d at 406, we conclude Plaintiff's argument does not fail for lack of specificity. This is so because our review of the record shows the ALJ did not explicitly weigh evidence tending to support disability. In addition to the matters discussed in the previous section of this Memorandum, including Dr. Ciavarino's notation of marked restrictions in some areas of functioning, some inconsistencies in the ALJ's RFC discussion as well as probative evidence omitted from his analysis render the Court unable to find that his RFC finding is based on substantial evidence.

First, we note that Plaintiff's impairments resulted in at least eight hospital inpatient admissions between November 2008 and May 2010. (R. 200-25, 335-43, 420-97, 499-503.) Dr. Arthur Jenkins, III, performed three back surgeries on Plaintiff at Mt. Sinai Medical Center in New York--the first on March 19, 2009, the second on April 16, 2009, and the third on October 14, 2009. The

14

record indicates that between the second and third surgeries, Plaintiff experienced relief from some pain but continued with severe and worsening pain. (*See*, *e.g.*, R. 504-05, 506.) In May of 2009, because of the nature of Plaintiff's pain Dr. Jenkins suspected a nonunion and arranged for placement of an external spinal fusion stimulator. (R. 333.) In June of 2009, Dr. Jenkins gave Plaintiff a prescription for a Jewett extension brace to address her back pain. (R. 506.) In August of 2009, Dr. Jenkins reported that further surgery was indicated. (*Id.*) Following her October 14, 2009, surgery, Plaintiff reported compliance with her brace and continued pain to Philip Hlavac, M.D. (R. 370.) On December 7, 2013, Dr. Hlavac noted that because Plaintiff was "in the relatively early postop period, I would expect her to have pain at this point both from the underlying degenerative disc disease, the relative immobility in the brace and the surgery itself." (R. 371.) Dr. Hlavac stated that Plaintiff would continue with the brace for two weeks and then be weaned out of it over a six-week period. (*Id.*) He also noted that he would continue Plaintiff on Vicodin and ordered a TENS unit. (*Id.*)

While this record does not definitively determine that Plaintiff was under a disability from before her March 19, 2009, surgery through the October 14, 2009, surgery postop period which Dr. Hlavec recognized to be continuing through December 2009, because this period approaches the twelve-month requirement of the

15

Act and because Plaintiff was hospitalized for severe pain in November and December of 2008, detailed discussion of this probative evidence should have been included in the ALJ's RFC discussion.

We recognize that on July 16, 2010, Dr. Jenkins noted Plaintiff reported 75 percent to 85 percent improvement in her original preoperative thoracic back pain. (R. 498.) However, given the definition of disability in the Act and the longevity of Plaintiff's difficulties, eventual improvement does not mean that Plaintiff could not have satisfied the required twelve (12) duration during her eligibility period. *See* 42 U.S.C. § 423(d)(1)(A).

This is particularly so when Plaintiff's mental health/substance dependence hospitalizations are combined with her thoracic spine condition. After being found unconscious at home, Plaintiff was hospitalized at Mercy Hospital in Scranton, Pennsylvania, from February 27, 2010, to March 4, 2010, when "inpatient psych" was agreed upon and she was transferred to Marworth Treatment Center for a dual diagnosis which included opiate dependence. (R. 420-21, 435.) Plaintiff was admitted to Marworth on March 8, 2010, and discharged on March 24, 2010. (*See* R. 435.) Marworth outpatient notes dated April 15, 2010, indicate that Plaintiff "had a dual diagnosis of anxiety and depression which could exacerbate her chronic pain condition." (R. 444.)

16

Plaintiff was hospitalized in the mental health unit at Community Medical Center in Scranton, Pennsylvania, from May 4, 2010, to May 17, 2010. (R. 541.) In Dr. Patel's discharge summary, he noted that Plaintiff was admitted on a voluntary basis because of severe depression, increasing anxiety, not sleeping, not able to contract for safety, and thoughts of ending her life." (R. 541.)

Considering the timeline of Plaintiff's surgeries (including postoperative recovery periods and documented symptomology between procedures) and mental health related hospital stays, it is plausible that Plaintiff was unable to engage in any substantial gainful activity from March 2009 through May 2010. Thus, upon remand, the evidence should be reviewed in this chronological manner with further record development as needed.

We also find the ALJ's reliance on Dr. Prebola's examination and findings of February 13, 2009, problematic. (*See* R. 18.) Dr. Prebola's notation of symptom magnification and exaggeration tendencies, should be evaluated in the context of Plaintiff's surgeon's report of February 9, 2009, where he notes severe focal tenderness at about the level of T5-6, the MRI of the thoracic spine demonstrating "a significant surgical defect" and other significant changes, and new-onset baldder symptoms which he found to be "significant and concerning." (R. 344-45.) Dr. Jenkins concluded Plaintiff would respond well to immobilization surgically "as her pain is profoundly better wehn she is lying down, i.e., not

17

putting any weight on the prior surgical site" and he thus proceeded with surgical planning. (R. 345-46.)

The ALJ's consideration of opinion evidence, particularly his reliance on the report of Paul Taren, Ph. D., also warrants reconsideration given the ALJ's aforementioned failure to review examining source Dr. Ciaravino's notation of marked limitations which contrast with Dr. Taren's non-examining review. (*See* R. 20.) This is particularly significant since both reports were completed in June 2009. (R. 297, 303.) Furthermore, in Dr. Taren's "Explanation of Findings," he noted Plaintiff had not had any hospitalizations because of her mental impairment. (R. 319.) As the evidence reviewed above shows, Plaintiff had three (3) mental health related hospitalizations subsequent to Dr. Taren's report and prior to the ALJ's decision.

The Court recognizes evidence of Plaintiff's medication seeking behavior. (*See, e.g.* R. 369, 381-82.) The ALJ notes this behavior in combination with Dr. Prebola's finding of exaggeration tendencies. (R. 18-19.) While medication seeking behavior and narcotic dependence are certainly factors to be considered, we note that our review of the record does not reveal any finding by a treating physician that Plaintiff's reports of pain are not supported by her thoracic spine condition.

Based on this brief contextual review of the record, we cannot say the ALJ's RFC determination is based on substantial evidence

18

because he failed to discuss probative evidence. Thus, we conclude remand is required.

### III. Conclusion

For the reasons discussed above, this case must be remanded to the Acting Commissioner for further consideration consistent with this opinion. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: December 19, 2013